Filed 3/26/24  P. v. Sibomana CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>LEWIS ABDULKALI SIBOMANA,<br><br>  Defendant and Appellant. | B324810<br><br>(Los Angeles County<br>Super. Ct. No. LA092131) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura F. Priver, Judge.  Affirmed.

Christopher Lionel Haberman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Lewis Abdulkali Sibomana pleaded no contest to a single charge of sodomy of an unconscious or asleep person. After completing his sentence, he unsuccessfully moved to vacate his plea. Sibomana now appeals, arguing that the court and his counsel failed to advise him that a no contest plea would result in his being deported, the court did not explain the difference between a nonviolent crime under state law and an aggravated felony under federal immigration law, and the trial court violated the California Racial Justice Act of 2020 (Stats. 2020, ch. 317, § 1) (Racial Justice Act). We disagree and affirm the trial court's order denying relief and deny his request to remand to the trial court to give him an opportunity to develop his Racial Justice Act challenge.

## FACTUAL BACKGROUND

### A.    *The Charges and the Plea Negotiations*

Sibomana, a native and citizen of Rwanda, was admitted to the United States on a student visa in 2011. In February 2012, he unsuccessfully applied for asylum, and in September 2015, the federal government initiated removal proceedings.

In February 2020, Sibomana was arrested in Los Angeles and charged with sodomy of an unconscious or asleep person (Pen. Code,[1] § 286, subd. (f)(1); count 1), oral copulation of an unconscious or asleep person (§ 287, subd.(f)(1); count 2), misdemeanor sexual battery (§ 243.4, subd. (e)(1); count 3), and lewd act on a child more than 10 years younger than Sibomana (§ 288, subd. (c)(1); count 4). These alleged crimes occurred over a period of several months and followed a similar pattern.

---

[1] All further statutory references are to the Penal Code.

Sibomana met his victims in a social setting, invited them to his apartment where he offered them liquor, and then engaged in sexual activity after his victims were unable to consent or resist.

On April 9, 2021, Sibomana and his counsel attended a trial setting conference.[2] The prosecution had already offered a deal whereby, in exchange for Sibomana pleading guilty to count 1, the remaining counts would be dismissed and Sibomana would be sentenced to three years imprisonment with credit for time served. The prosecutor informed the court that she had "generously offered . . . a low term on count 1" and that it was her understanding that the parties were present in court "for a disposition" and "were expecting to come here for a plea." Sibomana's counsel acknowledged that the pending offer "won't remain open after today" and that Sibomana was "ready to take the deal" but had a question about the effect a plea would have on Sibomana's immigration status.[3] "I think he's ready to take the deal, but I just—I explained to my client that if you're not here—if you're not a citizen—and this—this type of offense has immigration consequences. You can be deported. . . . But either

---

[2] Sibomana does not contend, nor does the record suggest, that he was not present at all times during the proceedings set out in the reporter's transcript.

[3] Sibomana's concern arises from the classification of certain crimes as "aggravated felon[ies]" under federal immigration law. An aggravated felony includes a crime of violence with a prison sentence of a year or more. (8 U.S.C. § 1101(a)(43)(F).) Accepting the People's plea offer meant pleading no contest to an aggravated felony. An individual convicted of an aggravated felony is subject to mandatory removal and is ineligible for asylum. (*Moncrieffe v. Holder* (2013) 569 U.S. 184, 187–188.)

way he's advised that upon his release, they will most likely check and catch any immigration issues if he has any. So unless the court disagrees with that, I think that my client would be satisfied upon the court's confirmation." In response, the court stated, "The court is not an immigration expert. I would just say he should understand that he will be deported, denied reentry or naturalization."

Defense counsel asked for more time to consider the offer, but the prosecutor responded that "the offer is pulled as of today." After an off-the-record discussion with Sibomana, defense counsel told him, "You don't get to . . . come in 10 days. Stop asking that. Take the deal—now is the time if you're not coming back for trial some other date. You'll be deported, everything else that's going to happen. That's the federal government." After another conference with Sibomana, defense counsel informed the court and prosecution, "Ready to proceed, to accept the offer. [¶] . . . [¶] He's going to plead no contest to count 1 for three years."

Sibomana continued to ask questions, and the court expressed its willingness to take as much time as needed. "I think he wants to take the offer. That's fine. He needs to have his questions answered." Ultimately, the court agreed to reconvene after the lunch recess in order to resolve Sibomana's questions. "[I]f he has legitimate questions about the period of parole, things that are legitimate questions—and I really—I really—because this is a serious crime—and I want him to understand—I will come back at 1:30 to take the plea."

By the time court called his case in the afternoon, Sibomana had had more than two and a half hours to discuss the plea offer with his counsel, and the court informed him it

4

was "time to decide" whether to accept the plea. Sibomana still had questions, but the hearing transcript confirms (and Sibomana concedes) that none of those questions concerned the effect of a no contest plea on Sibomana's immigration status. Instead, they concerned matters such as the duration of parole, the mechanics of registering as a sex offender, and the fact that by pleading no contest Sibomana was giving up his right to appeal his conviction.

Defense counsel eventually stated that Sibomana was "ready to go forward." Before Sibomana entered his plea, the prosecutor advised Sibomana of the immigration consequences: "As a result of the plea, do you understand that if you are not a citizen of the United States, you must expect that the plea of no contest in this case will result in deportation, exclusion from admission or reentry to the United States, and a denial of naturalization and amnesty?" Sibomana answered, "Yes." Thereafter, Sibomana pleaded no contest to count 1 and the court dismissed counts 2 through 4.

On May 7, 2021, the court sentenced Sibomana to three years in state prison with credit for 909 days. Sibomana was released from prison in August of 2021. In September, federal immigration authorities took him into custody and placed him in detention pending a hearing on his deportation.

## B. *Sibomana's Motion To Vacate His Conviction*

On January 14, 2022, while in detention, Sibomana filed a pro se motion to vacate his conviction. As grounds for his motion, Sibomana asserted that "the court has not properly advised [him] of the immigration consequences specified which would be automatic deportation and exclusion from admission to the United States." In an accompanying declaration dated

December 15, 2021, Sibomana stated, "On April 7, 2021 the court failed to advise me that once I took a guilty plea or nolo contendere, the conviction will result in an exclusion from admission to the United States as required per . . . [section] 1016.5[,] subd[.] (a).[4] [¶] Statute requires the court to warn the defendant each of the three distinct possible immigration consequences such as (deportation, exclusion from admission to the United States and denial of naturalization). . . . [¶] [T]he court has not properly advised me of the Immigration consequences specified which would be automatic deportation and exclusion from admission to the United States. . . . [¶] I would not have pleaded guilty if I had known the potential horrific outcome that could integrate during court on the day April 7, 2021. I would have exercised my right to a jury trial." "My plea of no contest on April 7, 2021 was voluntary, but completely unaware of the circumstances would lead automatic deportation and exclusion admission to this country. [¶] I

---

[4] Section 1016.5, subd. (a), provides that, prior to accepting a guilty or no contest plea, the trial court must warn the defendant on the record that "[i]f you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Where, however, federal immigration law is clear that removal is mandatory, the defendant must be so advised. (*People v. Lopez* (2022) 83 Cal.App.5th 698, 712 [warning defendant that he may face adverse immigration consequences "was insufficient to inform [him] that the conviction would subject him to mandatory deportation and permanent exclusion from the United States"].)

received inaccurate advisement on the day of April 7, 2021[.]  The court failed to advise me that once I took plea guilty no contest will be aggravated felony under federal immigration law[.]  [¶] The court did not explain to me the difference between nonviolent crime under state law and aggravated felony under federal immigration law."

Because Sibomana was in immigration detention and unable to appear in support of his motion, the court appointed counsel to represent him.  On August 15, 2022, counsel filed a motion to set aside Sibomana's no contest plea under section 1473.7, subdivision (a)(1).  The motion argued that Sibomana "would not have plead [*sic*] guilty to [the] § 286[, subd.] (f) charge had he known that doing so would lead to his deportation," that "it was not until after the conviction that he was made aware of the severe consequences of his plea to the crime," and "[h]ad he understood that the plea would lead to deportation, he would not have accepted the plea and would have explored alternative options to avoid any immigration consequences."  The only evidence in support of the motion was Sibomana's declaration dated December 15, 2021.

The prosecutor who had appeared at Sibomana's plea and sentencing hearings filed the People's opposition to Sibomana's motion.  The opposition quoted from the transcript of the plea hearing, including defense counsel's statement to Sibomana that he would be deported, the court's admonition that Sibomana's no contest plea "will" result in his being deported, excluded from entry, and denied naturalization, the prosecutor's statement that the plea "will" result in deportation, exclusion from admission or reentry to the country, and denial of naturalization and amnesty,

7

and Sibomana's statement that he understood the prosecutor's admonition.

On September 21, 2022, the same judge who had presided over the plea and sentencing hearings the previous year heard the motion to vacate the conviction. Likewise, the same prosecutor who appeared at the plea and sentencing hearing appeared at the motion hearing.

In denying the motion, the court stated, "This court took great pains and gave Mr. Sibomana a great deal of time both in the morning and in the afternoon to make sure that this is what he wanted to do, enter into this disposition. There's no way to make that clearer than to say, 'you will be deported.' And, I'm sorry, I don't have to accept his declaration as true. I do not because I viewed him during the plea. I watched his demeanor. I answered all his questions. When he wanted more time, I gave him more time to speak to defense counsel. It was obvious that immigration was in the forefront of his mind because it's one of the first things we talked about. [¶] . . . [¶] And I think Mr. Sibomana is being disingenuous when he says he didn't understand. There's no way he couldn't have understood. I do not believe his declaration. And I understand counsel filed it, you know, based upon information and belief. That's fine. But I was here. I saw him. We made sure that he understood. And I don't know how to make it more clear than we made it to Mr. Sibomana. So for those reasons, the court denies the motion to vacate the conviction."

Sibomana filed a timely notice of appeal from the order denying his motion.

# DISCUSSION

### A. *The Trial Court Correctly Found Sibomana Understood the Consequences of His Plea*

The motion for relief filed by Sibomana's appointed counsel relied on section 1473.7, subdivision (a)(1), under which "[a] person who is no longer in criminal custody may file a motion to vacate a conviction or sentence" that is "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence."

In *People v. Espinoza* (2023) 14 Cal.5th 311 (*Espinoza*), our Supreme Court held that a party seeking relief under this statute must satisfy a two-part test. "The defendant must first show that he did not meaningfully understand the immigration consequences of his plea." (*Id.* at p. 319.) A party who establishes his lack of understanding of the consequences of his plea must then show that his misunderstanding constituted prejudicial error, which " 'means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.' " (*Ibid.*, quoting *People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*).)

The trial court addressed only the first part of the test set out in *Espinoza*, and rejected Sibomana's claim that he did not understand the effect of a no contest plea on his immigration status. In the trial court Sibomana had the burden of proving lack of understanding by a preponderance of the evidence. (§ 1473.7, subd. (e)(1).) On appeal, we apply independent review to evaluate whether Sibomana understood the consequences of

9

his no contest plea. (*Espinoza, supra*, 14 Cal.5th at p. 319.) "When courts engage in independent review, they should be mindful that ' "[i]ndependent review is not the equivalent of de novo review . . . ." ' [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations." (*Vivar, supra,* 11 Cal.5th at p. 527, italics omitted.) Instead, "[w]hen courts engage in independent review, they must give deference to the trial court's factual determinations if they are based on ' " 'the credibility of witnesses the [superior court] heard and observed.' " ' " (*Espinoza, supra*, 14 Cal.5th at p. 320; *Vivar, supra*, 11 Cal.5th at pp. 527–528 ["[i]n section 1473.7 proceedings, appellate courts should . . . give particular deference to factual findings based on the trial court's personal observations of witnesses"].)

Applying the independent review standard, we affirm the trial court's order. The trial court's findings that Sibomana's declaration was untruthful, and that Sibomana understood the consequences of his no contest plea, are based on the court's observation of Sibomana at his plea and sentencing hearings. We defer to those findings. We have also reviewed the reporter's transcript of the plea and sentencing hearings, which confirm that the court told Sibomana if he pleaded no contest he "will be deported, denied reentry or naturalization." Also, just before entering his plea the prosecutor told Sibomana that he "must expect that the plea of no contest in this case will result in deportation, exclusion from admission or reentry to the United States, and a denial of naturalization and amnesty." When asked by the prosecutor, "Do you understand that?" Sibomana replied, "Yes."

10

The only evidence supporting Sibomana's motion is his declaration stating he was never advised that accepting the prosecution's plea offer would result in his being deported. A defendant making a section 1473.7 motion "must provide ' " 'objective evidence' " ' to corroborate factual assertions. [Citation.] Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza, supra,* 14 Cal.5th at p. 321.) Sibomana's assertion that he was never given the warnings required by section 1016.5, subdivision (a) is plainly at odds with the objective evidence of the reporter's transcript of the plea hearing, which confirms that Sibomana was specifically told that his plea would result in his deportation, exclusion from admission to the United States and denial of naturalization.

Sibomana also argues that he is entitled to relief because he was not specifically advised he was pleading no contest to an "aggravated felony." (Boldface omitted.) Even if true, that too does not change the result. It is sufficient that Sibomana was warned of the consequences of pleading no contest to such a felony. The court has no duty to advise the defendant about federal immigration law other than to warn of the consequences of a guilty or no contest plea as provided in section 1016.5, subdivision (a). (*People v. Gregor* (2022) 82 Cal.App.5th 147, 164 [trial court that "properly advised defendant of the possible direct immigration consequences of his plea, that it may result in his being deported, or excluded from admission to the United States, or denied citizenship," had no obligation to warn that a guilty plea would prevent defendant from sponsoring other family members for citizenship or a visa]; *People v. Arendtsz*

11

(2016) 247 Cal.App.4th 613, 618–619 [court's duty to warn of immigration consequences is limited to that required by section 1016.5, subd. (a)]; *People v. Gari* (2011) 199 Cal.App.4th 510, 518 [reversing order granting relief from guilty plea by naturalized citizen; trial court had no duty to advise defendant that failure to disclose crimes could result in denaturalization].)

In *People v. Tapia* (2018) 26 Cal.App.5th 942, 953, the court rejected a contention identical to the one Sibomana is asserting. "Both in his motion and his declaration, [the defendant] emphasizes he was not told he was pleading to an 'aggravated felony,' apparently because that specific term was not used. Whether the offense to which [the defendant] pled is classified by the federal government as an aggravated felony is not a consequence of the plea; it is simply a legal classification for certain offenses. The consequence of the plea is that the charge to which [the defendant] pled would lead to his deportation and would bar him from reentry if he left the United States, and [the defendant] was advised of these consequences." (*Ibid.*)

The cases Sibomana cites for authority that the trial court erred in denying his motion are inapposite. For example, the defendant in *Espinoza* pleaded no contest to various crimes based on the assurance of his counsel's assistant that "if he pleaded no contest, 'everything was going to be fine.'" (*Espinoza, supra*, 14 Cal.5th at p. 318.) The defendant's counsel never advised him about the consequences of pleading no contest. The trial court who took the defendant's plea advised him that conviction "'may'" have adverse immigration consequences. (*Ibid.*) In *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 901, the defendant's counsel advised him that he would have an immigration hearing following his no contest plea, but not that

12

he was virtually certain to be deported. He initialed a form stating he understood that " 'I must expect my plea of guilty or no contest will result in my deportation' " (*id.* at p. 899), but explained that because of a visual impairment he was unable to read the form and signed it based on his counsel's assurance that " 'it covered everything we had already talked about.' " (*Id.* at p. 901.) Finally, in *People v. Ruiz* (2020) 49 Cal.App.5th 1061, the defendant was advised only that her no contest plea "may" result in deportation, which was "not an adequate advisement given the nature of her offense." (*Id.* at p. 1065.)

Sibomana's circumstances are materially different. He was expressly advised by his own counsel that "you'll be deported," and by both the court and the prosecutor that his no contest plea "will" result in deportation, exclusion from admission to the United States, and a denial of naturalization. Sibomana has pointed to no language barrier or other difficulty that could account for his not understanding the plain meaning of the warning that he was given. Unlike the cases he relies on, there is neither a credible declaration by Sibomana establishing his lack of understanding of the effects of his plea, nor objective evidence that he did not understand the consequences. Thus, Sibomana has not presented any reason why we should not defer to the credibility findings of the judge who presided over both the plea and sentencing hearings.

### B. *Even if Not Waived, Sibomana's Racial Justice Act Claim Lacks Merit*

In his opening brief, Sibomana asserts that his no contest plea should be vacated under the Racial Justice Act, Penal Code section 745. This statute, which took effect in 2021, provides that "[t]he state shall not seek or obtain a criminal conviction or

seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).) Violations of the statute include an exhibition of "bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin" (§ 745, subd. (a)(1)); the use of "racially discriminatory language about the defendant's race, ethnicity or national origin" (§ 745, subd. (a)(2)); that the defendant "was charged or convicted of a more serious offense than defendants of other races, ethnicities, or national origins who have engaged in similar conduct and are similarly situated" (§ 745, subd. (a)(3)); or that "[a] longer or more severe sentence was imposed on the defendant than was imposed on other similarly situated individuals [of other races, ethnicities, or national origins] convicted of the same offense" (§ 745, subd (a)(4)(A) & (B)). Procedurally, an aggrieved party may file a motion pursuant to section 745 or "a petition for writ of habeas corpus or a motion under [s]ection 1473.7, in a court of competent jurisdiction." (§ 745, subd. (b).) Under the statute, it is the defendant's burden to prove a violation "by a preponderance of the evidence." (§ 745, subd. (a).)

The Attorney General first argues that Sibomana has waived any claim under the Racial Justice Act by failing to raise it in the trial court as part of his motion for relief. In response, Sibomana argues that a motion under the Racial Justice Act may be made in a "court of competent jurisdiction," which, he insists, includes the Court of Appeal. Whether a Racial Justice Act claim may be made in the Court of Appeal in the first instance was recently addressed in *People v. Lashon* (2024) 98 Cal.App.5th 804. In *Lashon*, the Court of Appeal reviewed the Racial Justice Act, including amendments taking effect on January 1, 2024, and concluded that language providing

14

that claims under the Racial Justice Act may be raised "on direct appeal" did not mean that a defendant could bypass the trial court and assert a Racial Justice Act claim in the Court of Appeal in the first instance. (*Lashon*, *supra*, at pp. 810, 812.) The court in *Lashon* relied on "well-settled general appellate rules of forfeiture" to conclude that under the Racial Justice Act, including amendments effective January 1, 2024, a defendant forfeited a claim by not first presenting it in the trial court. (*Lashon*, *supra*, at p. 810.) "It makes little sense for the Legislature to prescribe a comprehensive procedure for making and adjudicating a section 745 motion at the trial level (including a specific waiver provision for untimely motions), only to allow defendants who could have but did not use that procedure (thereby preserving their claim for review) to bypass that procedure and pursue a section 745 claim for the first time on direct appeal." (*Lashon, supra,* 98 Cal.App.5th at p. 813.)

We need not decide whether *Lashon* was correctly decided on this point because Sibomana has failed to establish any right to relief under that statute. It is his burden to establish a violation by a preponderance of the evidence, but there is no evidence in the record of a violation of the Racial Justice Act. Sibomana has not directed us to any statements by the trial judge or by counsel indicating racial animus, and our review of the transcripts of the plea and sentencing hearings disclosed none. To the contrary, the reporter's transcripts show that the trial court treated Sibomana with respect and expressed nothing but concern that his questions be answered before accepting his plea. As far as Sibomana receiving a greater sentence than others similarly situated, the only evidence in the record is that his plea deal was viewed by both the court and the prosecution

as a generous one.  Finally, Sibomana points to no evidence in the record, and our review has disclosed none, indicating that Sibomana was charged with more serious offenses than others who committed similar acts.

Rather than address any of the indicia of bias set out in the Racial Justice Act, Sibomana points to the trial court's warning that Sibomana "will" be deported if he pleads no contest.[5] Sibomana argues that advising defendants that a guilty or no contest plea "may" result in adverse immigration consequences "is designed to protect the noncitizens by encouraging them to obtain immigration advice and understand the consequences of a conviction before they accept a plea bargain, and therefore does not exhibit bias or animus, [whereas] the 'will' version harms the noncitizen's interests, discourages communication with counsel and bargaining for immigration-safe dispositions, and disregards the legislative intent of the advisement."

Far from an exercise in anti-immigrant bias, the warning given was not only correct under the circumstances, it was also required by law.  Our Supreme Court has repeatedly held that warning a defendant that a plea "may" have immigration consequences is not sufficient, where the plea will in fact subject the defendant to mandatory removal or exclusion.  (*Vivar*, *supra*, 11 Cal.5th at p. 523 [trial counsel's failure to advise defendant of " 'the certain immigration consequences of his plea' " renders his representation " 'constitutionally deficient' "]; *People v. Patterson* (2017) 2 Cal.5th 885, 895–896 [where deportation is a mandatory

_____

[5] For purposes of this argument, Sibomana's appellate counsel is apparently conceding that Sibomana received this warning, notwithstanding Sibomana's declaration to the contrary.

16

consequence of a conviction, warning that a conviction " 'may have' " immigration consequences is insufficient].)

In short, even if Sibomana has not waived his Racial Justice Act claim by failing to assert it in the trial court, we conclude that he has failed to prove a violation of the Act by a preponderance of the evidence.

### C.    *Remand Is Not Appropriate*

Sibomana's final argument is that we should remand this case to the trial court to afford him an opportunity to further develop the record in support of his Racial Justice Act claim.  He does not, however, identify any specific evidence that he believes he could find, and offers no explanation why evidence could not have been obtained before the date of the motion hearing. Accordingly, we deny Sibomana's request for a remand.

## DISPOSITION

The order dated September 21, 2022 denying Sibomana's motion to vacate his conviction is affirmed.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

WEINGART, J.